*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

DONTE KELVIN ELLINGTON,

        Defendant-Appellant.

UNPUBLISHED
June 23, 2025
11:47 AM

No. 368315
Wayne Circuit Court
LC No. 22-005298-02-FC

Before: LETICA, P.J., and MURRAY and PATEL, JJ.

PER CURIAM.

Defendant appeals as of right from his jury-trial convictions of assault with intent to do great bodily harm less than murder (AWIGBH), MCL 750.84; armed robbery causing serious injury (armed robbery), MCL 750.529; assault with a dangerous weapon (felonious assault), MCL 750.82; and three counts of carrying a firearm while committing a felony (felony-firearm), MCL 750.227b. Defendant was sentenced to serve 18 to 120 months' imprisonment for the AWIGBH conviction, 8 to 15 years' imprisonment for the armed robbery conviction, one to four years' imprisonment for the felonious assault conviction, and two years' imprisonment for each felony-firearm conviction. We affirm.

## I. BACKGROUND

This case arises from a June 2022 robbery and shooting of a victim. Codefendant, Darian Dew, arranged to meet the victim to purchase five pairs of shoes from him. Dew, defendant, and codefendant, Tyron Stanford arrived at the meeting location—a vacant home in Detroit—in Dew's car. The victim drove himself to the meeting location. When the victim arrived, defendant, Dew, and Stanford were sitting in Dew's vehicle. Dew approached the victim, had a brief conversation with him, and then instructed the victim to place the shoe boxes in Dew's car. As the victim was loading Dew's car, defendant, who was on the rear passenger side of Dew's car, pulled out a gun. The gun was initially pointed toward the ground, but then defendant pointed the weapon at the victim. The victim was also armed, and withdrew his gun from its holster. Defendant fired shots at the victim. The victim returned fire while trying to escape. Defendant, Dew, and Stanford fled

the scene with both vehicles. The victim sought help from a neighbor, who drove the victim to the hospital.

After investigating the scene, officers went to the hospitals in the area where they encountered defendant, Stanford, and Dew. The three were arrested. Defendant was convicted and sentenced as indicated. This appeal followed.

## II. SUFFICIENCY OF THE EVIDENCE

Defendant first argues that there was insufficient evidence to establish that he aided or abetted the codefendants to sustain his convictions of AWIGBH and armed robbery. We disagree.

"Challenges to the sufficiency of the evidence are reviewed de novo." *People v Xun Wang*, 505 Mich 239, 251; 952 NW2d 334 (2020). "In reviewing the sufficiency of the evidence, this Court must view the evidence—whether direct or circumstantial—in a light most favorable to the prosecutor and determine whether a rational trier of fact could find that the essential elements of the crime were proven beyond a reasonable doubt." *People v Kenny*, 332 Mich App 394, 402-403; 956 NW2d 562 (2020). "[A] reviewing court is *required* to draw all reasonable inferences and make credibility choices in support of the jury verdict." *People v Oros*, 502 Mich 229, 239; 917 NW2d 559 (2018) (cleaned up). "It is for the trier of fact, *not the appellate court*, to determine what inferences may be fairly drawn from the evidence and to determine the weight to be accorded those inferences." *Id*. (cleaned up). Any and all conflicts that arise in the evidence must be resolved "in favor of the prosecution." *People v Mikulen*, 324 Mich App 14, 20; 919 NW2d 454 (2018).

"The elements of AWIGBH are (1) an assault, i.e. an attempt to offer with force and violence to do corporal hurt to another coupled with (2) a specific intent to do great bodily harm less than murder." *People v McKewen*, ___ Mich ___, ___; ___ NW3d ___ (Docket No. 158869); slip op at 5 (cleaned up). "The intent to do great bodily harm less than murder is 'an intent to do serious injury of an aggravated nature.' " *People v Stevens*, 306 Mich App 620, 628; 858 NW2d 98 (2014), quoting *People v Brown*, 267 Mich App 141, 147; 703 NW2d 230 (2005). "A factfinder can infer a defendant's intent from his words or from the act, means, or the manner employed to commit the offense." *People v Hawkins*, 245 Mich App 439, 458; 628 NW2d 105 (2001).

In accordance with MCL 750.529, the elements required to establish armed robbery are:

> (1) the defendant, in the course of committing a larceny of any money or other property that may be the subject of a larceny, used force or violence against any person who was present or assaulted or put the person in fear, and (2) the defendant, in the course of committing the larceny, either possessed a dangerous weapon, possessed an article used or fashioned in a manner to lead any person present to reasonably believe that the article was a dangerous weapon, or represented orally or otherwise that he or she was in possession of a dangerous weapon. [*People v Muhammad*, 326 Mich App 40, 61; 931 NW2d 20 (2018).]

Under the aiding and abetting statute: "Every person concerned in the commission of an offense, whether he directly commits the act constituting the offense or procures, counsels, aids, or abets in its commission may hereafter be prosecuted, indicted, tried and on conviction shall be

punished as if he had directly committed such offense." MCL 767.39. "[A]iding and abetting is not a distinct criminal act; rather, it is a theory of prosecution that imposes vicarious criminal liability on an accomplice for the acts of the principal." *People v White*, 509 Mich 96, 102-103; 983 NW2d 348 (2022). To convict under a theory of aiding and abetting, the prosecutor must

> prove beyond a reasonable doubt that the defendant aided or abetted the commission of an offense and that the defendant intended to aid the charged offense, knew the principal intended to commit the charged offense, or, alternatively, that the charged offense was a natural and probable consequence of the commission of the intended offense. [*People v Robinson*, 475 Mich 1, 15; 715 NW2d 44 (2006).]

"Aiding and abetting describes all forms of assistance rendered to the perpetrator of a crime and comprehends all words or deeds that might support, encourage, or incite the commission of a crime." *People v Ventour*, ___ Mich App ___, ___; ___ NW3d ___ (2023) (Docket No. 363922); slip op at 6 (cleaned up). "The quantum of aid or advice is immaterial as long as it had the effect of inducing the crime." *Id*. at ___; slip op at 6 (cleaned up). "An aider or abettor's state of mind may be inferred from all the facts and circumstances, including a close association between the defendant and the principal, and the defendant's participation in the planning or execution of the crime." *Id*. at ___; slip op at 6.

Defendant contends there was no evidence, direct or circumstantial, demonstrating: (a) he was aware of Dew's plan to rob and shoot the victim, (b) he intended to assist Dew in robbing and shooting the victim, or (c) he assaulted the victim intending to do great bodily harm. Defendant's argument is not persuasive. Although Dew initiated the meeting with the victim, defendant arrived with Dew. In addition to the victim's testimony, a neighbor confirmed the three individuals arrived in Dew's car. The evidence showed that defendant assisted in the robbery when he pulled out his gun and immediately pointed it at the victim after the shoes were placed in Dew's car. Defendant was the first to draw his gun, and the victim identified defendant as the first shooter. The victim testified that defendant was about five feet from him when defendant started shooting. Additionally, the victim testified no words were exchanged before the shooting, indicating defendant was aware of the plan. The investigating officers testified that the shell casings and blood trail they observed matched the victim's version of events. Once the shooting stopped, defendant, Dew, and Stanford fled the scene along with some of the victim's shoes. The victim did not receive payment for the shoes. Further, defendant went to the hospital shortly after the shooting for treatment.

"Circumstantial evidence and the reasonable inferences that arise from that evidence can constitute satisfactory proof of the elements of the crime." *People v Blevins*, 314 Mich App 339, 357; 886 NW2d 456 (2016). Defendant's challenges, including what inferences could be drawn from the evidence, are related to the weight and credibility of the evidence, which were issues for the jury to resolve. *Mikulen*, 324 Mich App at 20. The jury was free to accept or reject the theory of either party in light of the evidence presented at trial, and we will not interfere with the jury's role of determining issues of weight and credibility. *People v Baskerville*, 333 Mich App 276, 283; 963 NW2d 620 (2020). Further, we are required to resolve all conflicts in the evidence—whether direct or circumstantial—in favor of the prosecution, *Kenny*, 332 Mich App 402-403. Applying these standards, there was sufficient evidence to enable the jury to find beyond a

reasonable doubt that defendant aided and abetted in the underlying crimes of AWIGBH and armed robbery. We will not disturb that determination.

### III. DOUBLE JEOPARDY AND INCONSISTENT VERDICT

Defendant argues his convictions of AWIGBH and felonious assault violated double jeopardy and are inconsistent. We disagree.

When preserved, constitutional issues regarding double jeopardy and inconsistent verdicts are reviewed de novo. See *People v Russell*, 297 Mich App 707, 722; 825 NW2d 623 (2012); *People v Colon*, 250 Mich App 59, 62; 644 NW2d 790 (2002). Defendant concedes that he failed to raise either of these issues before the trial court and thus they are unpreserved. See *People v Montague*, 338 Mich App 29, 50; 979 NW2d 406 (2021) ("Defendant's argument that the trial court rendered inconsistent verdicts was raised for the first time in defendant's brief on appeal. Therefore, the issue is not preserved."); *People v McGee*, 280 Mich App 680, 682; 761 NW2d 743 (2008) ("Because [the defendant] raises these double jeopardy challenges for the first time on appeal, they are not preserved for appellate review."). Unpreserved constitutional issues are reviewed for plain error. *People v Borgne*, 483 Mich 178, 184; 768 NW2d 290 (2009).

To avoid forfeiture under the plain-error rule, a defendant must show that an error occurred, that it was clear or obvious, and that it was prejudicial, i.e., that it affected the outcome of the trial court proceedings. *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999). "Reversal is warranted only when the plain, forfeited error resulted in the conviction of an actually innocent defendant or when an error seriously affected the fairness, integrity or public reputation of judicial proceedings independent of the defendant's innocence." *Id*. at 763-764 (cleaned up).

The Double Jeopardy clause in the United States Constitution states that no person shall "be subject for the same offence to be twice put in jeopardy of life or limb." US Const, Am V. The Michigan Constitution also includes a double jeopardy provision, which states: "No person shall be subject for the same offense to be twice put in jeopardy." Const 1963, art 1, § 15. The prohibition against double jeopardy includes protecting individuals "against multiple punishments for the same offense." *People v Wafer*, 509 Mich 31, 37-38; 983 NW2d 315 (2022). "[T]he question of when multiple punishments are constitutionally permissible is a matter of determining what the Legislature intended." *Id*. at 38.

Defendant argues his convictions of AWIGBH and felonious assault violated double jeopardy because they constitute multiple punishments for the same offense. The crime of AWIGBH is defined by MCL 750.84, which states:

(1) A person who does either of the following is guilty of a felony punishable by imprisonment for not more than 10 years or a fine of not more than $5,000.00, or both:

(a) Assaults another person with intent to do great bodily harm, less than the crime of murder.

\* \* \*

-4-

(3) This section does not prohibit a person from being charged with, convicted of, or punished for any other violation of law arising out of the same conduct as the violation of this section.

The crime of felonious assault is defined by MCL 750.82(1), which provides that "a person who assaults another person with a . . . dangerous weapon without intending to commit murder or to inflict great bodily harm less than murder is guilty of a felony . . . . "

Our Supreme Court recently held that "convictions for both AWIGBH and felonious assault arising out of the same act do not violate constitutional double-jeopardy protections because the AWIGBH statute authorizes multiple punishments for the same conduct." *McKewen*, ___ Mich at ___; slip op at 16. The *McKewen* Court stated, "By including the expansive phrase 'any other violation of law' in MCL 750.84(3) while aware of the 'without inten[t]' language in MCL 750.82(1), it is evident that the Legislature intended to allow convictions for both offenses." *McKewen*, ___ Mich at ___; slip op at 14. Consequently, defendant's convictions of AWIGBH and felonious assault do not violate double jeopardy.

Defendant further argues his convictions of AWIGBH and felonious assault are inconsistent because the two offenses have contradictory and mutually exclusive *mens rea* provisions. However, our Supreme Court held in *McKewen* that a guilty verdict for felonious assault was not mutually exclusive to a guilty verdict for AWIGBH and upheld the defendant's convictions. *McKewen*, ___ Mich at ___; slip op at 6-7, 16. Defendant has failed to demonstrate that a plain error occurred.

## IV. PROSECUTORIAL ERROR

Defendant contends the prosecutor erred by improperly vouching for the victim's credibility. Alternatively, he argues that trial counsel was ineffective for failing to object to the prosecutor's improper argument. We disagree.

"We generally review de novo claims of prosecutorial misconduct on a case-by-case basis, in the context of the issues raised at trial, to determine whether a defendant was denied a fair and impartial trial." *People v Fyda*, 288 Mich App 446, 460; 793 NW2d 712 (2010). However, as defendant concedes, this issue is unpreserved. See *People v Mullins*, 322 Mich App 151, 172; 911 NW2d 201 (2017) (Issues of prosecutorial misconduct are "preserved by contemporaneous objections and requests for curative instructions."). "Because the challenged prosecutorial statements in this case were not preserved by contemporaneous objections and requests for curative instructions, appellate review is for outcome-determinative, plain error." *People v Unger*, 278 Mich App 210, 235; 749 NW2d 272 (2008).

"Issues of prosecutorial misconduct are decided case by case, and this Court must examine the entire record and evaluate a prosecutor's remarks in context." *People v Dobek*, 274 Mich App 58, 64; 732 NW2d 546 (2007). "Given that a prosecutor's role and responsibility is to seek justice and not merely convict, the test for prosecutorial misconduct is whether a defendant was denied a fair and impartial trial." *Id*. at 63. "A defendant's opportunity for a fair trial can be jeopardized when the prosecutor interjects issues broader than the defendant's guilt or innocence." *Id*. at 63-64. "Prosecutors are typically afforded great latitude regarding their arguments and conduct at

trial." *Unger*, 278 Mich App at 236. "They are generally free to argue the evidence and all reasonable inferences from the evidence as it relates to their theory of the case." *Id.*

Indeed, "[a] prosecutor may not vouch for the credibility of a witness by conveying to the jury that [she] has some special knowledge that the witness is testifying truthfully." *People v Clark*, 330 Mich App 392, 434; 948 NW2d 604 (2019). However, a "prosecutor may . . . argue from the facts that a witness is worthy of belief." *Id.* "The prosecutor also may comment on his own witnesses' credibility during closing argument, especially when there is conflicting evidence and the question of the defendant's guilt depends on which witnesses the jury believes." *People v Isrow*, 339 Mich App 522, 529-530; 984 NW2d 528 (2021) (cleaned up).

Defendant argues the prosecutor erred when he improperly vouched for the victim's credibility by stating during closing argument, "But [the victim] was honest[.]" We must review the prosecutor's remarks in context of the entire record. *Dobek*, 274 Mich App at 64. The prosecutor's complete statement was:

> Now, [the victim] even testified almost painfully about people he wasn't able to identify. Mr. Stanford, you heard testimony about him. You heard, and the evidence suggested that Mr. Stanford also ended up there at the Sinai Grace Hospital that Mr. Eliot (sic). You heard from Officer Torrielle Abrams (sp) who testified she encountered Mr. Stanford there. He had been shot in the foot. You can reach your own conclusions about that.
>
> *But [the victim] was honest*, 'I never saw that third person.' If he was making an effort to be dishonest how easy would it have been for him to say, oh, yeah. I saw that third person. I saw their face. I saw, I had a clear view of their face. [Emphasis added.]

Reviewing the prosecutor's remarks in context, the prosecutor did not imply to have any special knowledge concerning the victim's truthfulness. The prosecutor merely encouraged the jury to consider the circumstances surrounding the victim's testimony. At trial, there were concerns about the victim's failure to identify defendant in the photographic array. The prosecutor simply drew attention to the times when the victim admitted he did not know a certain detail or could not identify an individual. This Court has repeatedly held that an argument related to why the jury should believe a certain witness on the basis of the facts admitted at trial is not an instance of vouching. *People v Jackson (On Reconsideration)*, 313 Mich App 409, 426; 884 NW2d 297 (2015) (cleaned up); *People v Howard*, 226 Mich App 528, 548; 575 NW2d 16 (1997). This is especially true in a case such as this, where the ultimate decision of the jury comes down to witness credibility. *Jackson*, 313 Mich App at 426. Defendant has failed to show plain error in the challenged remarks. Because no error occurred, trial counsel cannot be deemed ineffective for failing to raise a futile objection. See *People v Chelmicki*, 305 Mich App 58, 69; 850 NW2d 612 (2014) ("[D]efendant's claim of ineffective assistance of counsel must fail because defense counsel is not required to make a meritless request or objection.").

## V. DISPROPORTIONATE SENTENCE

Defendant argues his sentence was disproportionate. We disagree.

"Sentencing decisions are reviewed for an abuse of discretion." *People v Boykin*, 510 Mich 171, 182; 987 NW2d 58 (2022). "An abuse-of-discretion standard recognizes that there may be more than one principled outcome and the trial court may not deviate from that principled range of outcomes." *Id*., citing *People v Babcock*, 469 Mich 247, 269; 666 NW2d 231 (2003). "[W]ithin-guidelines sentences are to be reviewed for reasonableness[.]" *People v Posey*, 512 Mich 317, 359; 1 NW3d 101 (2023) (Opinion by BOLDEN, J.).[1] "[T]he key to reasonableness review is whether the sentence is proportionate." *Id.* Thus, "the proper inquiry when reviewing a sentence for reasonableness is whether the trial court abused its discretion by violating the 'principle of proportionality' set forth in *People v Milbourn*, 435 Mich 630, 636; 461 NW2d 1 (1990), 'which requires sentences imposed by the trial court to be proportionate to the seriousness of the circumstances surrounding the offense and the offender.' " *People v Steanhouse*, 500 Mich 453, 459-460; 902 NW2d 327 (2017). A proportionate sentence considers "the reformation of the offender, the protection of society, the discipline of the offender, and the deterrence of others from committing the same offense." *Boykin*, 510 Mich at 183. But "these are not the only relevant sentencing criteria and trial courts are not required to consider each of these factors when imposing a sentence." *Id*. at 183-184.

"When a trial court sentences a defendant within the guidelines' recommended range, it creates a presumption that the sentence is proportionate." *Posey*, 512 Mich at 360. To overcome that presumption, "the defendant bears the burden of demonstrating that their within-guidelines sentence is unreasonable or disproportionate." *Id*. at 359. A defendant may overcome the presumptive proportionality of a within-guidelines sentence by "present[ing] unusual circumstances that would render the presumptively proportionate sentence disproportionate." *People v Bowling*, 299 Mich App 552, 558; 830 NW2d 800 (2013) (cleaned up); see also *Milbourn*, 435 Mich at 636 ("Conceivably, even a sentence within the sentencing guidelines could be an abuse of discretion in unusual circumstances."). "Unusual" means "uncommon, not usual, rare." *People v Sharp*, 192 Mich App 501, 505; 481 NW2d 773 (1992) (cleaned up).

In this case, it is undisputed that the applicable minimum sentencing guidelines were: (a) 29 to 57 months for the AWIGBH conviction; (b) 126 to 210 months for the armed robbery conviction; and (c) 5 to 23 months for the felonious assault conviction. Defendant was sentenced to: (a) 18 to 120 months' imprisonment for the AWIGBH conviction; (b) 8 to 15 years' imprisonment for the armed robbery conviction; and (c) two to four years' imprisonment for the felonious assault conviction. Because defendant's minimum sentences were within the sentencing guidelines, his sentences are presumed proportional. *Posey*, 512 Mich at 360. Defendant bears the burden of demonstrating that his within-guidelines sentences are unreasonable or disproportionate. See *Posey*, 512 Mich at 357.

First, defendant argues that his eight-year minimum sentence for his armed robbery conviction was disproportionate because it was harsher than the sentences imposed on his codefendants, who pleaded guilty. "Sentences must be individualized and tailored to fit the

---

[1] While *Posey* was a plurality opinion that is not technically binding, this Court held "it [is] prudent to follow the holding in the interest of judicial economy." *People v Purdle (On Remand)*, ___ Mich App ___, ___; ___ NW3d ___ (2024) (Docket No. 353821); slip op at 4.

circumstances of the defendant and the case." *In re Jenkins*, 438 Mich 364, 376; 475 NW2d 279 (1991), abrogated in part on other grounds *People v Mitchell*, 454 Mich 145, 176; 560 NW2d 600 (1997). A sentencing court is not required to consider the sentence of a codefendant. *Id*. While "[a] sentencing court cannot base its sentence on a defendant's decision to exercise his constitutional right to a jury trial[,]" *People v Brown*, 294 Mich App 377, 389; 811 NW2d 531 (2011), "a defendant's sentence is not necessarily unconstitutional where it is higher following a trial than had he taken a plea[,]" *People v Ventour*, ___ Mich App ___, ___; ___ NW3d ___ (2023) (Docket No. 363922); slip op at 8.

Codefendants accepted responsibility and took advantage of plea agreements. In exchange for his plea, Dew was sentenced for armed robbery, felony-firearm, and fourth-degree fleeing and eluding, MCL 257.602a(2). In exchange for his plea, Stanford was only sentenced for AWIGBH and felony-firearm. On the other hand, a jury found defendant guilty of AWIGBH, armed robbery, felonious assault, and felony-firearm. Further, defendant's minimum sentence for AWIGBH was less than Stanford's, not greater as defendant contends. Additionally, the victim testified that defendant was the first to point the weapon at the victim and the first to fire his weapon at the victim.

Defendant further argues that the trial court failed to justify its sentence on the record. Contrary to defendant's assertions, the trial court explained its reasoning:

> The Court had an opportunity to preside over this matter. And the Court is aware that it was not [defendant] that set this up. It was actually Mr. Dew who accepted the People's plea prior to trial. Unfortunately, [defendant] declined to accept the People's offer. Which was your right.
>
> So the Court is going to take into consideration that [defendant] was not the leader. And the fact that he lacks a criminal history. This appears to be his first contact with the criminal justice system. No juvenile contacts and no misdemeanors.

While brief, the trial court clearly stated its understanding of the case, defendant's involvement, and his criminal history before imposing its sentence. The record reflects that the court considered the circumstances of the offense and the applicable guidelines range to determine an appropriate penalty. The trial court's rationale for imposing its sentence does not indicate that it penalized defendant for exercising his right to a jury trial. Defendant has failed to present any unusual circumstances sufficient to overcome the presumption of proportionality.

Affirmed.

/s/ Anica Letica
/s/ Christopher M. Murray
/s/ Sima G. Patel